## JOHN L. SULLWOLD AND OTHERS v. CITY OF ST. PAUL.[1]

November 9, 1917.

No. 20,517.

**City of St. Paul — objection to assessment for public improvement — "resident owners."**

1. The words "resident owners" as used in section 243 of the charter of the city of St. Paul, considered and *held* to apply only to parties owning property on the line of the improvement and residing within the city.

**Same — apportionment of damages and assessments — discretion of court.**

2. In the award of damages and assessment of benefits where the improvement, when considered in connection with the property affected, is such that honest minds might differ, the apportionment thereof is a legislative function, and the courts will not interfere in the absence of a clear abuse of discretion.

**Same — classification of owners — charter valid.**

3. Section 243 of the charter of the city of St. Paul *held* not to be in conflict with the Fourteenth Amendment to the Federal Constitution.

**Same — right of eminent domain.**

4. Under the charter of the city of St. Paul, the council may condemn and take land and structures thereon, or as much thereof as may be necessary for the purposes of the improvement.

[1]Reported in 164 N. W. 983.

In the matter of opening, widening and extending an alley across block 9, Whitney & Smith's Addition to St. Paul, John L. Sullwold, Charles A. Bettingen, and others, filed objections with the council of St. Paul. From the confirmation of the taking of their property and the award of damages to them on account thereof, the two persons named appealed to the district court for Ramsey county. The appeal was heard before Brill, J., who confirmed the assessment. From the judgment entered pursuant to the order confirming the assessment, John L. Sullwold and Charles A. Bettingen appealed. Affirmed.

*Keller & Loomis,* for appellants.

*O. H. O'Neill* and *John A. Burns,* for respondent.

QUINN, J.

Appeal from a judgment of the district court sustaining an order of the city council of the city of St. Paul, establishing an alley through a business block, awarding damages for the property sought to be acquired, and assessing the cost against the property benefited.

Proceedings were initiated, asking for the establishment of an alley 14 feet in width, across block 9, Whitney & Smith's Addition to St. Paul. Such proceedings were had that the city council made an order establishing the alley, awarding damages to the owners of property sought to be acquired and assessing the cost of the alley against the property found to be benefited thereby, and certified the award and assessment to the district court for confirmation.

The entire frontage on the alley is substantially 590 feet, divided into 7 parcels, and owned by 13 parties. While the proceeding was pending before the council, a petition in remonstrance, in due form, signed by 8 persons, owners of 4 of such parcels of land having a lineal frontage of 358 feet upon such proposed alley, was filed with the council. Three of these petitioners resided in the city, the other five residing outside the city, but within the state. The five owners of the other 3 parcels of land, having a lineal frontage of 232 feet upon the alley, resided in the city.

Section 243 of the city charter of St. Paul provides in part as follows:

"No public improvement, the cost or any part of which, shall be paid by an assessment on the property deemed benefited, shall be made if a

petition of remonstrance as hereinafter provided is filed with the council at any time prior to the passage and adoption of the final order therefor. * * *

"Such petition shall describe the improvement or improvements, and shall be signed by not less than sixty (60) per cent of the resident owners, or their agents, of such property aforesaid representing not less than fifty (50) per cent of the lineal frontage on the line of such improvements * * *"

Upon the hearing in district court appellants offered such petition in evidence, and it was objected to upon the ground that it was incompetent, irrelevant and immaterial. The objection was sustained upon the ground, that the charter provided that the petition should be signed by not less than sixty (60) per cent of the resident owners of such property representing not less than fifty (50) per cent of the lineal frontage on the line of the improvement.

Much testimony was offered, and, on February 7, 1917, the district court made and entered separate orders affirming each award of damages, and also a separate order confirming the final order establishing the alley and affirming each assessment. Judgment was entered accordingly.

As we understand appellants contend: (1) That the words "resident owners" as used in the charter should be interpreted to mean parties owning property on the line of improvement and residing in the state; (2) that the petition of remonstrance was signed by the required number of qualified petitioners and therefore the alley was not legally established, and that the petition should have been admitted in evidence; (3) that the assessments and awards were grossly unfair and inequitable and could only have been made upon an erroneous principle of law or demonstrable mistake of fact; (4) that if the right of remonstrance were restricted to residents of the city, the charter would be invalid, as being in conflict with the Fourteenth Amendment of the Federal Constitution, and (5) that the proposed alley is subject to inconsistent rights.

The first two contentions may be disposed of together. The charter provides that no public improvement shall be made if a petition of remonstrance describing the improvement and signed by not less than sixty (60) per cent of the resident owners, representing not less than fifty (50) per cent of the lineal frontage on the line of the improvement, be filed

138 M—18

with the council prior to the adoption of the final order therefor. The words "resident owners" as used in the charter can have reference only to those residing within the city as distinguished from nonresidents. While the charter may have the same effect as an act of the legislature, yet it does not constitute a law of the state. It is applicable to the city only, is a law of limited application, and the ruling of the trial court was correct. It follows that the petition was insufficient, not admissible in evidence, and the court had jurisdiction in the premises.

We think it clearly appears that the improvement, when considered in connection with the property affected, was such that honest minds might differ in the award of damages and assessment of benefits; that the apportionment thereof was a legislative function, in which the court will not interfere unless there is a clear abuse of discretion. Hughes v. Farnsworth, 137 Minn. 295, 163 N. W. 525. We discover no such abuse in either the award or assessment in this case. The contention of appellants cannot be sustained.

Appellants' fourth contention is, that the section of the charter under consideration is in conflict with the Fourteenth amendment to the Federal Constitution in that the improvement is not to be made if 60 per cent of the resident owners of the property on the line thereof shall file with the council a remonstrance against the improvement, which right is not given to nonresidents, thereby discriminating against them. In disposing of this question, the Supreme Court of the United States, in the case of Field v. Barber Asphalt Pav. Co. 194 U. S. 618, 621, 622, [24 Sup. Ct. 784, 48 L. ed. 1142] says: "It is not the purpose of the Fourteenth Amendment, as has been frequently held, to prevent the states from classifying the subjects of legislation and making different regulations as to the property of different individuals differently situated. The provision of the Federal Constitution is satisfied if all persons similarly situated are treated alike in privileges conferred or liabilities imposed. * * * The alleged discrimination is certainly not an arbitrary one; the presence within the city of the resident property owners, their direct interest in the subject matter and their ability to protest promptly if the means employed are objectionable, place them on a distinct footing from the nonresidents whom it may be difficult to reach. Furthermore, there is no discrimination among property owners in taxing

for the improvement. When the assessment is made it operates upon all alike." This decision applies and governs the case under consideration.

Section 234, subd. 3, of the charter provides:

"When the council, by ordinance, shall determine that any street, alley, lane, parkway, boulevard or other public thoroughfare or highway, containing such boundary or building lines, shall be opened, widened, extended, straightened or altered for actual public use and enjoyment to its full width and extent or to the limits of said boundary or building-lines, the council shall thereupon take and condemn or order the taking and condemnation of any and all permanent buildings or structures or so much as may be necessary, remaining or standing on any and all lands being within and lying between such boundary or building lines, and at the same time, remove or cause the removal of any and all temporary buildings or structures aforesaid."

Under this provision the council may condemn and take land and structures thereon or as much thereof as may be necessary for street or alley purposes. But, where land is taken against the will of the owner, the statute which authorizes the proceeding will be construed to authorize the taking of the interest only which is required by the necessity of the contemplated use, and that is just what the council sought to do in the instant case. Smith v. City of Minneapolis, 112 Minn. 446, 128 N. W. 819. There is no merit in the contention that the proposed alley is subject to inconsistent rights.

Affirmed.